## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NDX Advisors, Inc., NDX Capital, | ) | |
| Management, LLC, NDX Holdings, | ) | |
| Inc. and NDX Trading, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| Andrew Balistreri, Sheila Balistreri, Suzanne | ) | |
| Bittrolff, Gerald Brochini, Carol Brochini, | ) | |
| Vincent Cantwell, Linda Cantwell, Jack Darcey, | ) | |
| Patricia Darcey, Raymond Elkins, Doreen Elkins, | ) | |
| Beuleah Flood, James Frederick, Linda | ) | |
| Frederick, Pauline Ghazaleh, Gary Gilmore, | ) | |
| Michelle Gilmore, Duncan Grant, Barbara Grant, | ) | |
| Catherine Hanoum, Darlene Harris, Lynette | ) | |
| Heibert, as Executor of the Estate of Jean | ) | |
| Robinson and the Jean Robinson Living Trust, | ) | |
| David Hinkel, Joan Himes, Sharon Isbell, Jack | ) | |
| Jones, Dorothy Jones, Howard Johnson, Alyce | ) | |
| Johnson, Donald King, Patricia King, Ernest | ) | |
| Kinzli, Diane Kinzli, Gary Lindquist, Mavis | ) | |
| Muller, Helen Penning, Judith Perkowski, Larry | ) | |
| Robertson, Anita Robertson, Pamela Sanderson, | ) | |
| Mary Louise Schuster, Rodney Sekimoto, Sharon | ) | |
| Senning, Ann Solomon, Frank Thomas, Virginia | ) | |
| Thomas, Robert Thomas, Zelda Thomas, Shirley | ) | |
| Thompson, Cary Tremewan, Jan Tremewan, | ) | |
| Ardeth Ullman, Carmen Yaskewich, Gilbert Yee, | ) | |
| Michiko Yee, and Irene Yunt, | ) | |

Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs NDX Advisors, Inc. ("Advisors"), NDX Capital Management, LLC

("Capital"), NDX Holdings, INC. ("Holdings") and NDX Trading, Inc.  ("Trading")

(collectively, "Plaintiffs"), by their attorneys, complain against Andrew Balistreri, Sheila

1

Balistreri, Suzanne Bittrolff, Gerald Brochini, Carol Brochini, Vincent Cantwell, Linda Cantwell, Jack Darcey, Patricia Darcey, Raymond Elkins, Doreen Elkins, Beuleah Flood, James Frederick, Linda Frederick, Pauline Ghazaleh, Gary Gilmore, Michelle Gilmore, Duncan Grant, Barbara Grant, Catherine Hanoum, Darlene Harris, Lynette Heibert, as Executor of the Estate of Jean Robinson and the Jean Robinson Living Trust, David Hinkel, Joan Himes, Sharon Isbell, Jack Jones, Dorothy Jones, Howard Johnson, Alyce Johnson, Donald King, Patricia King, Ernest Kinzli, Diane Kinzli, Gary Lindquist, Mavis Muller, Helen Penning, Judith Perkowski, Larry Robertson, Anita Robertson, Pamela Sanderson, Mary Louise Schuster, Rodney Sekimoto, Sharon Senning, Ann Solomon, Frank Thomas, Virginia Thomas, Robert Thomas, Zelda Thomas, Shirley Thompson, Cary Tremewan, Jan Tremewan, Ardeth Ullman, Carmen Yaskewich, Gilbert Yee, Michiko Yee, and Irene Yunt (collectively, "Defendants"), in their individual capacities and as representatives of various trust and brokerage accounts, as follows:

allege as follows:

## NATURE OF THE ACTION

1.      This is a diversity case in which Plaintiffs seek a declaration of their rights and obligations vis-á-vis Defendants, and a preliminary and permanent injunction restraining Defendants from continuing to pursue claims against Plaintiffs in arbitration proceedings before the Financial Industry Regulatory Authority ("FINRA") since there was no underlying agreement between the parties to arbitrate.

2.      As alleged more fully below, Defendants are a separate group of investors who claim to have been defrauded by a former Oak Brook, Illinois based investment firm, Enterprise Trust Company ("Enterprise").  Enterprise ceased doing business in March

2008 after it was forced into receivership by the Securities and Exchange Commission ("SEC"). *See*, *SEC v. Enterprise Trust Co.*, *et al.,* 08 CV 1260.

3.   To recover the losses they claim to have suffered at the hands of Enterprise, Defendants have requested that their claims be adjudicated by FINRA arbitration panel in California. *Balisteri, et al. v. Legent Clearing, LLC*, et al., FINRA Arbitration No. 08 - 03782

4.   In the before-mentioned FINRA arbitration, Defendants seek to recover from brokerage firms through which Enterprise transacted business on the theory that those firms, and several of their employees, aided and abetted Enterprise's fraud.

5.   One of the brokerage firms Defendants seek to hold liable for Enterprise's wrongdoing is Traderight Securities Corp. ("Traderight"), a securities broker-dealer at which Enterprise maintained one or more accounts – in Enterprise's own name, not in the name of any Defendant – and through which Enterprise purchased and sold securities. Upon information and belief, each Defendant gave Enterprise limited power of attorney to execute trades in their respective accounts.  According to Traderight, which is no longer doing business, it did not give trading advice or recommendations, including to any Defendant, and did not manage or otherwise exercise any discretion over customer accounts, including any account of any Defendant.  According to it, Traderight's only role was to execute non-discretionary trades submitted by Enterprise and to carry the resulting positions in an account in the name of Enterprise.  Defendants allege that Traderight negligently failed to exercise appropriate supervision over Enterprise's accounts in violation of the common law and California's blue sky statute.

6.     Defendants have recently amended their Statement of Claim to allege that Advisor, Capital, Holdings and Trading (collectively, "NDX Plaintiffs"), are responsible for Traderight's alleged wrongdoing under an alter ego theory that Traderight and NDX Plaintiffs are to be treated as one and the same by virtue of an attempted asset transfer – not sale – involving the transfer of an investment adviser license between Tradright and Advisors.  That transfer was never consummated.

7.     At no relevant time, did the NDX Plaintiffs have any relationship whatsoever with Defendants, contractual or otherwise.  Indeed, none of the Defendants purports to have (i) opened or maintained a trading account with the NDX Plaintiffs, (ii) engaged the NDX Plaintiffs to either to execute, clear or settle trades or take custody of any Defendant's investment assets, (iii) entered into any other contractual agreement or relationship with NDX Plaintiffs or (iv) communicated with either the NDX Plaintiffs or Traderight for that matter regarding either Defendants' accounts at Enterprise or Enterprise's account at Traderight.  According to the SEC, Traderight's sole relationship was with Enterprise and its only role was to execute trades directed by Enterprise.  The NDX Plaintiffs had no relationship with Enterprise ever.

8.     Accordingly, the NDX Plaintiffs owe Defendants no legal duty and cannot be held liable for the harm Defendants claim to have suffered at the hands of Enterprise.

9.     Of more immediate concern, the controversy between Defendants and Plaintiffs over the existence and/or scope of Plaintiffs' alleged duty to Defendants is not one that is subject to an underlying agreement to arbitrate, whether before a FINRA arbitration panel or any other non-judicial tribunal.

10.     Because arbitration is purely a creature of contract, and Defendants do not and cannot allege that they are or were parties to an underlying arbitration agreement with Plaintiffs, Defendants cannot require Plaintiffs to arbitrate and perceived dispute between them.

11.     Nor are Defendants "customers" of Trading, the only one of the NDX Plaintiffs that is a member of FINRA, within the meaning of FINRA rules that require a member firm to arbitrate customer grievances at the request of the customer.  Arbitration, in that instance, would be by virtue of the contract between the broker-dealer and the self regulatory organization, FINRA. Advisor, Capital and Holdings are not even a member of FINRA and have no reason to be required to arbitrate any dispute with Defendants.

12.     In short, there is no legal basis upon which Plaintiffs can be forced to arbitrate the claims Defendants have brought against them in the California based FINRA proceeding, and Defendants' continued pursuit of their claims against Plaintiffs in that forum should be halted forthwith.

13.     One court within the Northern District of Illinois has already issued a preliminary injunction prohibiting other former Enterprise investors from proceeding in a FINRA arbitration against a similarly situated broker-dealer. *Interactive Brokers, LLC v. Duran et al.*, No. 08-cv-6813, 2009 WL 393827 at *6 (N.D. Ill. Feb. 17, 2009).  Another Court issued a temporary restraining order against these same Defendants. *Legent Clearing, et al. v. Balistreri, et al.* No. 09-cv-3662 (N.D. Ill. Aug. 19, 2009).

## PARTIES

14.     Advisors is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business in Minnesota.

15.     Capital is a limited liability company organized and existing under the laws of the State of Minnesota with its principal place of business in Minnesota.

16.     Holdings is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Minnesota.

17.     Trading is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Minnesota.

18.     All Defendants are residents of California, and upon information and belief, are California citizens as well.

## JURISDICTION AND VENUE

19.     This is an action for declaratory and injunctive relief pursuant to Federal Rules of Procedure 57 and 65 and 28 U.S.C. §§ 2201 and 2202.

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.  Specifically, Plaintiffs are citizens of Minnesota and Texas; Defendants are citizens of California; and in the California arbitration, one or more of the Defendants seek damages from Plaintiffs in amounts exceeding the jurisdictional minimum.

21.     This Court has personal jurisdiction over each of the Defendants in that their claims asserted against Plaintiffs in the California Arbitration arise out of investments Defendants made with or through Enterprise which, upon information and belief, transacted business—with Defendants—out of its principal place of business in Oak Brook, Illinois.

22.     Additionally, each of the Defendants in this case has availed himself,

herself or itself of the benefits and protections of this Court in that each has made claims against the assets of Enterprise pursuant to a receivership proceeding pending before U.S. District Judge James Zagel styled *SEC v. Enterprise Trust Company, John H. Lohmeier, and Rebecca A. Townsend,* Case No. 08 CV 1260. Upon information and belief, Defendants have communicated with and provided information to the court-appointed receiver, have received money from the receiver and have lodged objections to the receiver's plan of distribution, which was upheld by Judge Zagel.

23.     Venue is proper in this judicial district under 28 U.S.C. § 1391(a) (2), in that a substantial part of the events or omissions giving rise to the controversy between Plaintiffs and Defendants occurred within this judicial district. Upon information and belief, it was in this judicial district, if any, that Enterprise engaged in the conduct alleged to have caused Defendants' investment losses, and it is the venue where Trading maintains a branch office.

## **JOINDER OF DEFENDANTS**

24.     The California based Defendants are properly joined in this action under Federal Rule 20(a) (2) (B), in that Plaintiffs' claims against all Defendants raise common issues of law and fact.

25.     Traderight was formerly a securities broker-dealer that, upon information and belief, executed trades at the direction of its customers or their designated financial advisors.

26.     According to the SEC, from approximately June 2006 to November 2007, Enterprise maintained one or more trading accounts at Traderight in the name "Enterprise Trust Company." According to the SEC, trading in Enterprise's accounts was

controlled by John H. Lohmeier ("Lohmeier"), the president and CEO of Enterprise, and/or Rebecca A. Townsend ("Townsend"), a corporate vice president, both of whom worked out of Enterprise's office in Oak Brook, Illinois.

27.     In the California Arbitration, Defendants allege that they transferred certain investment assets from other brokerage firms to Enterprise.  Defendants entrusted these investments to Enterprise based upon alleged representations by Lohmeier or Townsend or upon the recommendations of Defendants' financial advisors.

28.     According to Defendants, Enterprise improperly and without authorization commingled their investment funds with the funds of other Enterprise customers in one or more trading accounts that Enterprise maintained in its own name. Enterprise then improperly pledged Defendants' assets as collateral with certain brokerage firms to fund speculative margin trading that was intended to benefit other customers of Enterprise. Defendants allege that Enterprise's fraudulent scheme was devised and executed by Lohmeier and Townsend.

29.     Defendants each allege that Traderight is liable for the losses they allegedly suffered at the hands of Enterprise, Lohmeier and Townsend because, in sum, Traderight, through its individual officers, "failed to take steps to detect, prevent and report" Enterprise's fraud and, thus, aided and abetted such fraud. Defendants assert claims against Traderight under theories of respondeat superior, common law fraud, negligence, breach of fiduciary duty and violation of California's "blue sky" laws.

30.     Defendants seek damages from Plaintiffs and the other parties named in the Arbitration in an amount not less than five million dollars.

31.     Defendants seek to hold Plaintiffs liable for their losses that approximately

occurred between 2006 and 2008 by virtue of an alter ego theory based upon an attempted asset transfer that was never completed that occurred well after those losses were incurred during the second quarter of 2010!

32.     According to Traderight and the SEC, at no relevant time did any Defendant open, maintain, control or trade in an account with Traderight.

33.     According to Traderight and the SEC, at no relevant time did any Defendant deposit cash or other assets into any trading account maintained at Traderight.

34.      According to Traderight, at no relevant time did any Defendant negotiate or enter into any agreement, formal or informal, with Traderight.

35.     Upon information and belief, at no relevant time did any Defendant communicate, orally, electronically or in writing, with Traderight or any representative of it.

36.     At no relevant time did any Defendant open, control, maintain or trade in any accounts with Plaintiffs.

37.     At no relevant time did any Defendant deposit any assets into an account maintained or introduced by Plaintiffs.

38.     At no relevant time did any Defendant enter into any agreement, formal or informal, or negotiate the same with Plaintiffs.

40.     At no time relevant did any Defendant communicate, orally, in person, electronically or in writing with Plaintiffs.

## COUNT I DECLARATORY JUDGMENT

(For Declaration That Plaintiffs Not Have Breached

Any Legal Duty, and Are Not Liable, to Any Defendant)

41.   Plaintiffs repeat and reallege paragraphs 1 through 40 as though fully set forth herein.

42.   As the California Arbitration makes clear, an actual case or controversy exists between Plaintiffs and Defendants. Defendants allege that Traderight has breached one or more legal duties and therefore, by an alter ego theory, the NDX Plaintiffs are liable to Defendants for the losses they claim to have suffered as a result of Enterprise's alleged fraud. Plaintiffs deny that Advisor or any other of the NDX Plaintiffs are the alter ego of Traderight, that they have breached any legal duty owed any Defendant and deny that they are liable for any Defendant's losses or any portion thereof.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants (i) declaring the respective rights and obligations of the parties pursuant to 28 § 2201 (a), (ii) awarding Plaintiffs their costs of suit, and (iii) granting such other relief as may be just and proper under the circumstances.

## COUNT II PRELIMINARY and PERMANENT INJUNCTION

(For an Injunction Prohibiting Defendants from
Pursuing the California Arbitration)

43.   Plaintiffs repeat and reallege paragraphs 1 through 42 as though fully set forth herein.

44.   Although Trading is a member of FINRA, none of the Defendants is a "customer" of it, or for that matter Traderight, within the meaning of FINRA Rule

10

12200, which requires member firms to arbitrate customer disputes at the request of the customer. *See, Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003); *Interactive Brokers*, 2009 WL 393827 at *6.

45.     There is no underlying agreement between the Plaintiffs and any Defendant to arbitrate their disputes.

46.     Defendants have asserted claims for money damages against Plaintiffs in the California Arbitration and, unless enjoined, will continue to pursue such claims to award and judgment.

47.      Unless Defendants are enjoined, Plaintiffs will suffer irreparable harm in that Plaintiffs will be obliged to defend themselves in the California Arbitration or risk an adverse outcome in those proceedings.  In this Circuit, being compelled to arbitrate a dispute that one has not yet agreed to arbitrate constitutes "irreparable harm" as a matter of law.  *Chicago School Reform Board of Trustees v. Diversified Pharm. Services., Inc.* 40 F. Supp. 2d 986, 987 (N.D. Ill.1991).

48.     Plaintiffs have no adequate remedy at law, in that any post-award challenge by Plaintiffs to an arbitrator's award in the California Arbitration would still require Plaintiffs in the first instance to defend themselves in an arbitration proceeding where there was no underlying agreement among the parties to arbitrate.

49.     Defendants will suffer no irreparable harm in the event an injunction issues, in that Defendants will still be able to pursue their alleged claims against Plaintiffs in an appropriate judicial forum.

50.     The balance of equities favor Plaintiffs who, if no injunction issues,

would be forced to defend themselves in an arbitration forum despite the lack of any underlying agreement among the parties to arbitrate.

51. The public interest would be served by enjoining Defendants from pursuing their claims against Plaintiffs in an arbitration forum, and requiring Defendants to pursue such claims, if at all, in an appropriate judicial forum.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order (i) preliminarily and permanently enjoining Defendants from further pursuing any claims against Plaintiffs in the California Arbitration, (ii) prohibiting Defendants from initiating or prosecuting any new or additional claims against Plaintiffs other than in a court of competent jurisdiction, (iii) awarding Plaintiffs their costs of suit, and (iv) granting such other relief as may be just and proper.


Dated: November 1, 2010

                        Respectfully submitted,

                        NDX Advisors, Inc., NDX Capital Management, LLC, NDX Holdings, Inc. and NDX Trading, Inc.


                        By:

                        _____/s/_____

                        Andrew S. May

Andrew S. May
May Law, PC
3700 W. Devon Ave., Ste. E
Lincolnwood, IL 60712
(847) 675-1052
amay@maylawpc.net